GEORGE G. MORRIS *v.* BROOKHAVEN & PEARL RIVER RAILROAD COMPANY.

[41 South. Rep., 267.]

RAILROADS.    *Bridge gang.    Negligence.    Contributory negligence.    Safe place to work.*

Where the foreman of a railrod bridge gang directed a laborer to stand at a designated place on a bridge and caused a push car, improperly and negligently loaded under his direction, to be moved over the bridge, whereby the laborer was injured, he is *prima facie* entitled to recover of the railroad company; and if he were guilty of contributory negligence it must be pleaded.*

FROM the circuit court of Lawrence county.

HON. JOHN R. ENOCHS, Judge.

Morris, the appellant, was plaintiff in the court below; the railroad company, the appellee, was defendant there.    From a judgment sustaining a demurrer to plaintiff's amended declaration and leave to further amend not being asked, dismissing the suit, the plaintiff appealed to the supreme court.    The facts are stated in the opinion of the court.

_____

*This case was decided before that of *Bradford Construction Co.* v. *Heflin, ante* 814.

*G. Wood Magee,* and *May & Flowers,* for appellant.

The declaration may not be carefully and skillfully drawn, but it contains sufficient matter of substance for the court to proceed upon the merits.    Code, § 671; *Gibson Mfg. Co.* v. *Meek,* 71 Miss., 617 (s.c., 15 South. Rep., 789).

This court will not be hypercritical in determining whether the declaration is in ordinary and concise language.    Code 1871, § 577, required a clear statement of the cause of action in concise and ordinary language.    Code 1880, § 1536 (Code 1892, § 671) omitted "clear" and declared that a statement in ordinary and concise language would be sufficient.    The code of 1871 reads: "And which plainly shows sufficient matter of substance." The codes of 1880 and 1892 omit "plainly," and declare that a declaration is sufficient "if it contain sufficient matter of substance for the court to proceed upon the merits."    These slight changes in this statute indicate the persistent tendency to do away with what is not essential, and to require of a pleader only what is absolutely necessary.

There may be repetition in the declaration before us, but that does not make it bad.    Repetition is condemned by the common law rules, and by our code of 1871.    It is not condemned by subsequent codes.    It may be bad form, but it does not necessarily go to the substance of the case.

The principal question raised by the demurrer is whether the declaration shows that his injury was caused by negligence of the foreman, the person claimed by him to have been his superior officer, and the one who had the right to control and direct his services.    One of the principal grounds of demurrer relied upon is that "the injury complained of was committed by the fellow servants of the plaintiff."

Now, it is charged that the plaintiff and the other employes of said railroad company were under the direction and control of Copps, the superior agent and officer of said defendant company, in the repairing of said bridge, and that Copps had the right, by virtue of his position with said defendant, to control and direct

the services of this plaintiff in the work then being done, and did so control and direct this plaintiff at the time; and by the gross carelessness, recklessness and wantonness of Copps, the superior agent and officer of the defendant as above alleged, in loading said push car with cross ties, to which were nailed projecting strips two or three feet longer than the crossties hereinbefore referred to, the plaintiff was knocked off said bridge as aforesaid.   These allegations, taken with other statements in the declaration, mean, and can only mean, that the plaintiff was working on the bridge repairing the track, and on the bridge at a place where he was directed by the foreman to work, and that the same foreman was having crossties, used in such repair work, brought from some point near by on a push car; that this push car had been going back and forth passing the plaintiff where he was at work under the directions of the foreman, and when the said car would pass the plaintiff he would get out on the cap sills of the bridge, so as to not be struck by the projecting crossties on the push car; that his said superior officer, the very man who had the right to control and direct his services and the services of plaintiff's fellow servants, had the push car loaded in a different manner from that in which it had been loaded theretofore, and that the loading of it in this manner was negligence on his part.

The declaration charges specifically that plaintiff's injury was caused by the gross carelessness, recklessness and wantonness of the superior officer in loading the car.

Copp, as shown by the declaration, was a superior officer, and had the right to control and direct the services of the plaintiff and his fellow servants.   He placed the plaintiff on the bridge to work at a certain place; he had the push car run back and forth, passing the plaintiff; he had the car loaded in a manner that made it dangerous to run it past the plaintiff under the circumstances of his position.   The declaration charges that the loading of the car was the act of the superior officer, and not the act of the plaintiff's fellow servants.   He charges that his injury

was caused not by the mere running of the car, but by the running of it loaded as it had been loaded under the directions of the superior officer.

*Thomas Brady, Jr.,* for appellee.

It is not contended for appellant that there was any defect in the ways, means and appliances of appellee. It is not contended that the appellee's agent, Copp, gave a general or special order that appellee's push car should be loaded with crossties to which strips were nailed. It is not contended that appellee's agent, Copp, directed appellant to take a position in doing his work or in letting the push car pass him that was not safe. The only contention is that the car was loaded differently from the manner in which it had been formerly loaded, in that, instead of crossties alone, it was loaded with crossties to which strips were nailed.

Construing the declaration most favorably to appellant, it becomes perfectly apparent that he engaged with several fellow servants under the general control and direction of appellee's agent, Copp, who were building a bridge; when it became necessary for his fellow servants to pass him with the push car, instead of walking to the end of the bridge or to a point beyond which the push car would not be moved, he took his position on a cap, under the direction of appellant's agent, Copp, which he avers to have been a safe position, although he says he was thirty-five feet from the ground, with only a cap to support him, which means a space of eighteen by twelve inches standing room four feet below the top of the bridge. In taking this alleged safe position, appellant had, so he alleges, acted under the direction of appellee's agent, Copp, when the push car was loaded with simple crossties. When the push car approached him with crossties to which were nailed strips extending two or three feet beyond the end of crossties, he was without orders as to where to go in order to let the car pass. He had not been instructed to take that position regardless of how the push car was loaded. When conditions changed in the course of the work, he was supposed to use com-

mon sense in selecting a safe position.    He saw, or could have
seen, how the push car was loaded, and being without orders to
take his old position, since the car was not loaded with crossties
as it had been when he was directed where to go, it was his duty
to walk to the end of the bridge to a point to which the push car
would not be moved.    Instead of protecting himself this way, he
took the same position.    The appellant saw, or could have seen,
that it was impossible for the push car so loaded to pass him.
He saw the car, else he would not have left the work.  · It was his
duty to avoid danger by going to a point where the car would not
pass him, or by having his fellow servants to stop the push car.
This he failed to do.    The push car was not propelled by steam;
it could not move any faster than it was pushed, and there is no
complaint of the way in which it was being moved.    The appel-
lant evidently measured with his eye the length of the projecting
strips and concluded they would probably pass him while on the
cap of the sill, and so, rather than walk a few feet, he took the
dangerous risk; by which gross contributory negligence he is
denied the right of receiving or recovering against the appellee.

*J. S. Sexton,* on same side.
    It certainly requires no stretch of the imagination to conclude
that plaintiff could have walked on that bridge as far as his
fellow servants could have pushed the car on the same, and that
he could have walked off the bridge as fast as those servants could
push a loaded car.    It is still more evident that it was as easy for
him to see the approaching car and notify his fellow servants to
stop the same as it was for them to see him and notify them to get
out of the way; and, in fact, it is easy enough to understand how
he could have seen the car approaching him when he might have
been obscured from the view of those who were pushing the car
on account of the load on the same, and yet he seems to have
gotten the idea that he was under no obligation whatever to look
out for himself, but that it was the duty of appellee to look after
him, and, if necessary, to load him on the car and see that he was

delivered in safety under any circumstances.    There is no pretense that the car was coming down grade at a rapid rate, or that it came around a curve, or was otherwise obscured from view, and the declaration shows plainly that plaintiff, who could have protected himself by walking off the bridge, by asking his fellow servants to stop the car, and in all probability by stepping on the slow-moving car, could have protected himself from any sort of risk, and yet, with utter indifference to his own safety, he took the only position of danger which it was possible for him to find, and that was out on the caps of the bridge within reach of the strip nailed to the crossties on the push car, and he did not even so much as attempt to stoop to allow it to pass over him, but stood bolt upright, apparently with a view to ascertaining whether he could be knocked off the bridge or not.

A master is not liable for injuries received by his servant while performing an act in obedience to his orders where the attendant danger was so obvious that no prudent man would have incurred it.    *Truly* v. *Lumber Co.,* 83 Miss., 430 (s.c., 36 South. Rep., 4); *Long's Administrator* v. *Illinois, etc., R. R. Co.,* 29 Am. & Eng., R. Cas. N. S., 349; note 11, Am. & Eng. R. Cas. N. S., 429; *Whatley* v. *Macon, etc., R. Co.,* 11 Am. & Eng. R. Cas. N. S., 425.

A track laborer, who, to avoid a passing train, steps from one track to another, receiving an injury from the trains on the latter when he might have got off from all the tracks, cannot recover. *Sheay* v. *Pennsylvania, etc., R. Co.,* 13 Atl. Rep., 193.

Argued orally by *J. N. Flowers,* for appellant, and by *J. S. Sexton,* for appellee.

CALHOON, J., delivered the opinion of the court.

Annotated Code 1892, § 671, is this: "The declaration shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition; and if it contain sufficient matter of substance for the court to proceed

upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different." In *Gibson* v. *Meek,* 71 Miss., 617 (15 South. Rep., 789), this court said, through Chief Justice CAMPBELL: "The fine argument of the learned counsel for the appellant might have prevailed half a century ago, when form was often of more importance with courts than substance; but happily that era has passed, never to return. Now substance is what the courts of this state look to. We have no forms of action. Every action is on the case, and one need only to state a case in concise and intelligible language, containing sufficient matter of substance for the court to see that he has a meritorious cause, and his declaration will be sufficient."

Applying the test of this statute and opinion to the case before us, it is sufficiently shown that Morris was at work on the bridge being repaired, at the place he was ordered to be by the chief who was in command, and who told him where to step for safety when push cars came along with materials; that this point was safe with push cars properly loaded; that the one which did the damage was, and for the first time, improperly loaded, in that it had, nailed to the sides, projecting strips three feet longer than the material on it; that it was so fixed by servants in the loading line of the work by direction of this same chief; that this was gross negligence; that Morris took all necessary precaution to save himself, but, because of the strips, was knocked off and hurt. It is hypercriticism and overstrained interpretation to confine the language to the fellow servants who manually nailed on the strips, since it specifically charges that this was done by direction of the chief in command of all. If there was contributory negligence which can avail appellee, it may be pleaded, but must be determined by a jury.

*Reversed, demurrer overruled, and cause remanded.*